DEARBORN HEIGHTS SCHOOL DISTRICT NO 7 v WAYNE COUNTY
MEA/NEA

Docket No. 200468. Submitted February 11, 1998, at Detroit. Decided
December 8, 1998, at 9:00 A.M.

Dearborn Heights School District No. 7, the employer of teacher Sher-
rie Adis, brought an action in the Wayne Circuit Court against
Wayne County MEA/NEA (Adis' union) and Adis, seeking to have
an arbitration award vacated. The union and Adis filed a counter-
complaint, seeking to have the arbitration award confirmed. Adis
had been suspended following proceedings in the State Tenure
Commission, which decided that Adis had assaulted and battered a
fellow teacher, as the school district had charged. The Court of
Appeals, GRIFFIN, P.J., and BANDSTRA and M. WARSHAWSKY, JJ., in an
unpublished opinion per curiam, issued August 2, 1996 (Docket No.
183953), had affirmed the decision of the commission. Arbitration
had concerned a grievance filed by the union that the implementa-
tion of the commission's decision violated the terms of the collec-
tive bargaining agreement. The arbitrator had reduced the length of
the suspension after finding that Adis had not committed battery.
On cross-motions for summary disposition, the court, Diane M.
Hathaway, J., granted summary disposition for the union and Adis,
determining that the arbitrator was free to decide differently from
the commission with respect to the issue whether Adis had com-
mitted assault and battery. The school district appealed.

The Court of Appeals *held*:

Collateral estoppel applied to preclude Adis and her union from
relitigating, and the arbitrator from deciding anew, the question
whether Adis had assaulted and battered a fellow teacher.

1. The doctrine of collateral estoppel precludes relitigation of an
issue in a different, subsequent action between the same parties or
their privies when the earlier proceeding resulted in a valid final
judgment and the issue in question was actually and necessarily
determined in that prior proceeding. In this case, the parties to the
proceedings before the commission and the arbitrator were sub-
stantially identical and the question of precisely what misconduct
Adis engaged in was actually determined in the proceeding before
the commission.

2. Where the earlier proceeding giving rise to the question of collateral estoppel was an administrative one, the doctrine will preclude relitigation of an issue that had been necessarily decided if, as in this case, the administrative proceeding was adjudicatory in nature, a method of appeal was provided, and the Legislature intended the administrative determination to be final in the absence of an appeal.

Reversed and remanded.

1. ACTIONS — COLLATERAL ESTOPPEL.

The doctrine of collateral estoppel precludes relitigation of an issue in a different, subsequent action between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding.

2. ACTIONS — COLLATERAL ESTOPPEL — IDENTITY OF PARTIES.

Collateral estoppel requires substantial, not precise, identity of parties; the purpose of this requirement is to ensure that collateral estoppel is applied only where the interests of the litigating party are adequately represented in the first proceeding; a nonparty to an earlier proceeding will be bound by the result if that party controlled the earlier proceeding or if the party's interests were adequately represented in the original matter.

3. ACTIONS — COLLATERAL ESTOPPEL — ADMINISTRATIVE PROCEEDINGS.

The doctrine of collateral estoppel will preclude relitigation of an issue that had been necessarily decided in an administrative proceeding if the administrative proceeding was adjudicatory in nature, a method of appeal was provided, and the Legislature intended the administrative proceeding to be final in the absence of an appeal.

*Allen, James & Foley, P.C.* (by *Kevin J. Foley*), for Dearborn Heights School District No. 7.

*Fink Zausmer, P.C.* (by *Harvey I. Wax*), for Wayne County MEA/NEA and Sherrie Adis.

Before: O'CONNELL, P.J., and GRIBBS and SMOLENSKI, JJ.

O'CONNELL, P.J. Plaintiff/counterdefendant Dearborn Heights School District No. 7 appeals as of right from

the circuit court's decision on a motion for summary disposition enforcing an arbitration award and denying a motion to vacate the award in favor of counterplaintiffs. We reverse and remand.

On April 18, 1994, the school district's interim superintendent filed tenure charges against counterplaintiff Sherrie Adis pursuant to the teacher tenure act.[1] The charges alleged that Adis had threatened and physically assaulted another staff member. Pursuant to the statute, the school district's board of education decided to proceed on the charges as filed. Adis contested the charges, arguing before a hearing referee of the State Tenure Commission that the assault and battery did not occur, and, alternatively, that if it did occur as alleged, it did not constitute "just and reasonable cause" for discharge. On December 5, 1994, the hearing referee issued a preliminary decision and order finding that Adis had committed the assault and battery and that she should be subject to a one-semester, unpaid suspension. Both parties objected to the determination. On February 27, 1995, the commission issued an opinion and order affirming the hearing referee's preliminary decision but increasing the suspension from one to three semesters. This Court affirmed the commission's decision on appeal. *Adis v Dearborn Heights School Dist No 7 Bd of Ed,* unpublished opinion per curiam of the Court of Appeals, issued August 2, 1996 (Docket No. 183953).

Adis then decided to pursue an alternate administrative remedy. Because her employment with the school district was governed by a collective bargaining agreement, her interests in that agreement were

---

[1] MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*

represented by her union, defendant/counterplaintiff Wayne County MEA/NEA. The union filed grievances on Adis' behalf, asserting that the school district violated the collective bargaining agreement by implementing the decision and order of the commission. An arbitrator heard the grievances in October and November of 1995. In an opinion dated May 7, 1996, the arbitrator, declaring that he was not bound by the commission's earlier findings or decision, determined that Adis' misconduct did not include a battery and that Adis should receive a one-month suspension without pay.

The school district then filed a complaint in the circuit court to vacate the arbitrator's award, arguing that the award was an abuse of discretion, arbitrary, capricious, unreasonable, based on substantial errors of law, inconsistent with the parties' contract, and against public policy. The union filed an answer and countercomplaint to enforce the award. The parties then filed cross-motions for summary disposition. The circuit court ruled that the arbitrator was not required to follow the decision of the commission, holding that the two proceedings concerned sufficiently different issues and parties as to render principles of res judicata or collateral estoppel inapplicable. Accordingly, the court granted summary disposition in favor of counterplaintiffs.

The school district presents on appeal an issue of first impression, namely, whether the doctrine of collateral estoppel applies to labor arbitration proceedings as concerns issues previously decided by the commission. We conclude that Adis is estopped from relitigating the commission's factual conclusion that Adis had intentionally struck a fellow teacher and

that upon remand the arbitrator's assessment concerning the propriety of her suspension under the collective bargaining agreement must presume the validity of that finding.[2]

The doctrine of collateral estoppel precludes relitigation of an issue in a different, subsequent action between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. See *People v Gates*, 434 Mich 146, 154; 452 NW2d 627 (1990); 1 Restatement Judgments, 2d, § 27, p 250. The doctrine is intended to relieve parties of multiple litigation, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Detroit v Qualls*, 434 Mich 340, 357, n 30; 454 NW2d 374 (1990), citing *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). Collateral estoppel bars relitigation of issues where the parties had a full and fair opportunity to litigate those issues in an earlier action. *Arim v General Motors Corp*, 206 Mich App 178, 195; 520 NW2d 695 (1994). In the instant

---

[2] Although Adis is estopped from asking the arbitrator to make factual findings concerning her misconduct contrary to the findings of the commission, she may properly ask the arbitrator to review the decision of the commission concerning the discipline to be imposed for that misconduct. Therefore, we are remanding this case to the arbitrator to permit the arbitrator to reconsider whether in light of the battery and other uncontested facts, a three-semester suspension without pay constitutes a breach of Adis' contractual right under the collective bargaining agreement to discipline for "just cause."

Because the exercises of judgment called for in the two proceedings concerned substantially different criteria—the commission's concern for whether Adis was suspended for cause as opposed to the arbitrator's concern for whether the three-semester suspension comported with the terms of the collective bargaining agreement—the arbitrator was free to assess independently what, given the misconduct the commission determined had taken place, the appropriate discipline would be.

case, the doctrine should have operated to prevent Adis and her union from relitigating the issue whether Adis intentionally struck her fellow teacher and therefore committed a battery.

The question of precisely what misconduct Adis engaged in is one of fact, essential to the judgment, which was actually litigated and resolved by the commission. See *Jones v State Farm Mut Automobile Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993) (noting that a key determination concerning whether an earlier proceeding controls a later one is whether "the same facts or evidence are essential to the maintenance of the two actions"). In this case, identical factual accounts were elicited from identical witnesses before the commission and the arbitrator, the two proceedings invoking the same burden of proof. Indeed, the arbitrator admitted into evidence the entire record from the administrative proceeding, including the hearing officer's preliminary decision and the commission's final order. Accordingly, the commission's factual determination should have bound the parties in the subsequent action, preventing the arbitrator from determining anew whether a battery occurred. See *O'Keefe v Dep't of Social Services*, 162 Mich App 498, 509-510; 413 NW2d 32 (1987).

The facts and circumstances in this case are similar to those of *Ingham Co Employees' Ass'n (ICEA) v Ingham Circuit Court*, 170 Mich App 118; 428 NW2d 7 (1988). In *ICEA*, the circuit court found that the plaintiff was not entitled to unemployment benefits pursuant to the applicable statute[3] because he had

---

[3] MCL 421.29(1)(b);  MSA 17.531(1)(b).

engaged in "misconduct" during his employment. *Id.* at 120-121. This Court affirmed that factual finding, *id.* at 121-122. The plaintiff then brought claims under the veterans' preference act, MCL 35.401 *et seq.*; MSA 4.1221 *et seq.* In lieu of conducting a full hearing, the parties stipulated that the court could use the plaintiff's record from the proceedings before the Michigan Employment Security Commission. *ICEA, supra* at 121. On appeal, this Court concluded that there was no "relevant distinction" between "misconduct" disqualifying an individual from receiving unemployment and "official misconduct" under the veterans' preference act, and that because the Court had already affirmed the lower court's finding of "misconduct," the plaintiff was estopped from relitigating that issue. *Id.* at 121-122. See also *Viera v Saginaw Bd of Ed*, 91 Mich App 555, 559- 560; 283 NW2d 796 (1979) (where the commission upheld a finding that a teacher was dismissed for reasonable and just cause, the teacher was collaterally estopped from recovering damages in a subsequent suit for breach of contract).

Further, the "substantial identity" of the parties in the two proceedings at issue here supports the application of collateral estoppel. *Local 98 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States & Canada, AFL-CIO v Flamegas Detroit Corp*, 52 Mich App 297, 302; 217 NW2d 131 (1974) (for purposes of collateral estoppel, "[s]ubstantial identity, not precise identity, is all that is required"), citing *Sunshine Anthracite Coal Co v Atkins*, 310 US 381; 60 S Ct 907; 84 L Ed 1263 (1940). The purpose of the substantial-identity rule is to ensure that collateral estoppel is applied only where the interests of the litigating party

are adequately represented in the first proceeding. See *Nummer v Dep't of Treasury*, 448 Mich 534, 542-543; 533 NW2d 250 (1995). Thus, a nonparty to an earlier proceeding will be bound by the result if that party controlled the earlier proceeding or if the party's interests were adequately represented in the original matter. *Becherer v Merrill Lynch, Pierce, Fenner & Smith, Inc*, 43 F3d 1054, 1069-1070 (CA 6, 1995). A party is one who was directly interested in the subject matter, and who had a right to defend in, or control, the proceedings, and who had a right to appeal from the judgment. *Duncan v State Hwy Comm*, 147 Mich App 267, 271; 382 NW2d 762 (1985), citing *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 42; 191 NW2d 313 (1971).

As this Court has noted, individual employees are "substantially identical to the labor organizations which represented them as charging parties before MERC." *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 60 Mich App 606, 612; 231 NW2d 479 (1975), aff'd 399 Mich 449; 249 NW2d 121 (1976). In the instant case, the same attorney represented the same parties and presented the same witnesses and evidence. Although the union may have an institutional interest of its own in enforcing the contractual requirement of just cause for discipline, Adis' interests were adequately represented before the commission, having had every incentive and opportunity to litigate her personal interest in the tenure proceeding fully and aggressively. Further, it is clear that the union was simply acting in a representative capacity for Adis in the arbitration proceedings. Thus, there was substantial identity between the parties for purposes of invoking collateral estoppel to bring the

commission's conclusion that Adis committed assault and battery to bear on any subsequent proceedings. See *Ayers v Genter*, 367 Mich 675, 678-679; 117 NW2d 38 (1962).

Both case law and public policy support this reasoning. As our Supreme Court has repeatedly noted, "Reviewing courts should not invade the exclusive fact-finding province of administrative agencies by displacing an agency's choice between two reasonably differing views of the evidence." *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441, 450; 473 NW2d 249 (1991), citing *MERC v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974). An arbitrator's review of an administrative agency's factual findings is subject to the same principle. Where resolution of a controversy involves both an administrative hearing and a statutorily recognized arbitration procedure, the latter should supplement, not obviate, the former. See *Jackson Fire Fighters Ass'n, Local 1306, AFL-CIO v City of Jackson (On Remand)*, 227 Mich App 520, 525; 575 NW2d 823 (1998). If a teacher were allowed to relitigate a factual question previously decided by the commission, it would reduce the administrative process to a mere rehearsal; an employee satisfied with the commission's findings could accept them, while a dissatisfied employee could start over with a clean slate by bringing the matter before an arbitrator. Although surely most dissatisfied litigants would enjoy a second bite at the apple, our system disfavors resort to successive litigation to resolve identical issues.

Where the earlier proceeding giving rise to the question of collateral estoppel was an administrative one, the doctrine will preclude relitigation of an issue that had been necessarily decided if the administrative proceeding was adjudicatory in nature, a method of appeal was provided, and the Legislature intended the administrative determination to be final in the absence of an appeal. *Nummer, supra* at 542. Counterplaintiffs argue that the last of these criteria is not met in the instant case. We disagree.

Several statutory indications suggest that the Legislature intended the commission's factual determinations to be final in the absence of, or affirmance upon, an appeal. Initially, we note that MCL 38.101; MSA 15.2001 vests the commission with the authority to determine whether a tenured teacher was discharged or demoted for cause.[4] Further, even if the teacher tenure act is silent concerning whether a determination by the commission is to be given preclusive effect, in the absence of legislative intent to the contrary, the applicability of principles of preclusion is presumed. See *Nummer, supra* at 548; *Lumley v Bd of Regents for the Univ of Michigan*, 215 Mich App 125, 133; 544 NW2d 692 (1996). Finally, it is instructive that, pursuant to the Administrative Procedures Act, the only procedure available to a party aggrieved by a final decision of the commission is direct review by the courts. MCL 24.301; MSA 3.560(201).[5] Because the appeal process, by its very nature, does not contemplate a new, original action,

---

[4] MCL 38.101; MSA 15.2001 provides, in part, that the "[d]ischarge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause and only as provided in this act."

[5] MCL 24.301; MSA 3.560(201) provides as follows:

the commission's decision is clearly intended to be a final decision on the merits. See *Nummer, supra* at 551. Counterplaintiffs' position in this case would leave this Court in the precarious position of having two different panels issue two potentially opposing opinions concerning one factual issue. Such circumstances are but one type of the "repetitious and needless litigation" that the doctrine of collateral estoppel is designed to prevent. *Storey v Meijer, Inc*, 431 Mich 368, 372; 429 NW2d 169 (1988); *Nummer, supra* at 541. Certainly this is not the result intended by the Legislature.

A teacher alleging wrongful termination or other adverse action typically has her choice from among multiple forums and causes of action to vindicate her rights.[6] For example, the teacher may file a claim with the federal Equal Employment Opportunity Commission or the Michigan Employment Relations Commission; she may pursue a grievance through arbitration under the collective bargaining agreement; she

When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy.

[6] Multiple recourse mechanisms are typically available to state employees seeking to vindicate their occupational rights. See Note, *Public sector grievance procedures, due process, and the duty of fair representation*, 89 Harv L R 752, 752-753 (1976). Nonetheless, the availability of a choice of forums should not be manipulated by an employee as a means of litigating the same claim in separate arenas.

may challenge her termination before the State Tenure Commission; or she may file suit in state or federal court with regard to a variety of statutory, common-law, or constitutional theories. The question here is, if the teacher chooses a forum, loses on the central claim, then appeals unsuccessfully to this Court, may she then relitigate her claim in a new forum? May she get a second bite at the apple? Further, if a litigant had the right to a second forum to adjudicate her rights without risk that the first adjudication were binding, one must ask, why not a third or fourth try after losing two or three times? These questions, of course, underscore the importance of finality in litigation. In this case, allowing the arbitrator to decide de novo a factual question already resolved by the commission and affirmed by this Court would invite an incongruous outcome.[7]

Because the arbitrator's award was based on different factual findings from those of the commission, we reverse the arbitrator's decision and remand for further proceedings consistent with this opinion. On remand, the arbitrator must accept the commission's factual findings.

Reversed and remanded. We do not retain jurisdiction.

GRIBBS, J. I concur in the result only.

---

[7] Were we to affirm the trial court's decision in this appeal, the parties would then suffer the dilemma of having received conflicting opinions from this Court. Which would they then be obliged to follow? It is obvious that they could not follow both.