MINICUCI v SCIENTIFIC DATA MANAGEMENT, INC

Docket No. 212439. Submitted April 4, 2000, at Detroit. Decided October 20, 2000, at 9:00 A.M.

Anthony Minicuci brought an action in the Macomb Circuit Court against Scientific Data Management, Inc., alleging, among other claims, breach of contract and violation of MCL 600.2961(4) and (5), MSA 27A.2961(4) and (5) with respect to sales commissions the defendant allegedly owed to the plaintiff. Before bringing his action, the plaintiff had filed a claim under the wages and fringe benefits act, MCL 408.471 *et seq.*; MSA 17.277(1) *et seq.*, with the Michigan Department of Labor, now the Department of Consumer and Industry Services, seeking the same unpaid sales commissions. The department issued a determination order against the plaintiff, prompting him to seek an appeal hearing. The plaintiff then requested that his appeal be dismissed without prejudice. A hearing officer dismissed the appeal with prejudice. The plaintiff did not seek judicial review of the order of dismissal, as allowed under MCL 408.481(9); MSA 17.277(11)(9). In the plaintiff's action, the circuit court, George E. Montgomery, J., granted summary disposition for the defendant, ruling that relief at common law was not available inasmuch as the plaintiff had elected to pursue, and was limited to, the administrative remedy made available by the wages and fringe benefits act. The plaintiff appealed.

The Court of Appeals *held*:

The circuit court correctly granted summary disposition for the defendant, albeit for the wrong reason. Collateral estoppel precludes the claims raised in the plaintiff's action.

1. Generally, for collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel. Three additional requirements must be satisfied where a defendant seeks relitigation preclusion on the basis of an administrative decision. The administrative determination must have been adjudicatory in nature and provide a right to appeal, and the Legislature must have intended to make the decision final absent an appeal.

2. In this case, all the requirements for application of collateral estoppel were met. The issue of the plaintiff's entitlement to commissions was litigated in the department, which issued a final determination against the plaintiff. The parties had a full opportunity to litigate the issue. There is mutuality of estoppel because the defendant would have been bound by a department decision against it. The department's consideration and investigation of the plaintiff's claim was adjudicatory in nature. The wages and fringe benefits act accorded the plaintiff a right of appeal from the administrative decision, and the act reflects legislative intent that an administrative decision be final absent an appeal.

Affirmed.

ESTOPPEL — COLLATERAL ESTOPPEL — ACTIONS — ADMINISTRATIVE DECISIONS.

Collateral estoppel precludes an action after an administrative decision where a question of fact essential to a judgment was actually litigated and determined in a final decision, the same parties had a full opportunity to litigate the issue, there is mutuality of estoppel, the administrative determination was adjudicatory in nature, a right of appeal was provided, and the Legislature intended to make the administrative decision final absent an appeal.

*Lipson, Neilson, Jacobs & Cole, P.C.* (by *Joseph P. Garin*), for the plaintiff.

*Strobl Cunningham Caretti & Sharp, P.C.* (by *Kieran F. Cunningham*), for the defendant.

Before: HOOD, P.J., and GAGE and WHITBECK, JJ.

GAGE, J. Plaintiff Anthony Minicuci appeals as of right from a trial court order granting defendant summary disposition of plaintiff's breach of contract and statutory sales commissions claims pursuant to MCR 2.116(C)(4) and (C)(7) (res judicata). We affirm.

I

In January 1991, plaintiff commenced employment with defendant Scientific Data Management, Inc., working as a commissioned sales representative. On February 24, 1995, plaintiff voluntarily ended this

employment. Defendant in March 1995 provided plaintiff a check covering the February 1995 commissions due plaintiff. According to plaintiff, however, defendant still owed him approximately $11,000, which represented unpaid commissions and bonuses, illegal deductions, and overrides.

In October 1995, plaintiff filed with the Michigan Department of Labor[1] a claim for the allegedly unpaid commissions pursuant to the wages and fringe benefits act (wage act), MCL 408.471 *et seq.*; MSA 17.277(1) *et seq.* Defendant responded that under the terms of its employment agreements with plaintiff, the permissible net write offs, including plaintiff's customers' canceled orders and bad debt losses, exceeded "the modest sum of commissions" due plaintiff. In April 1996, the department issued a determination order concluding that plaintiff was entitled to no further wages for the December 31, 1994, through February 24, 1995, period, in essence agreeing with defendant. The order advised plaintiff of his right to appeal the determination within fourteen days.

Plaintiff timely appealed the determination, and the department scheduled an August 8, 1996, hearing date for plaintiff's appeal. On August 6, 1996, plaintiff moved that his appeal "be withdrawn/dismissed without prejudice." An August 16, 1996, department order granted plaintiff's motion to dismiss, but ordered dismissal with prejudice. Although plaintiff denied that he ever received the order, a department "memorandum of transmittal" reflects that a copy of the order

---

[1] The Department of Labor subsequently became the Department of Consumer and Industry Services.

was properly sent. According to plaintiff, on August 7, 1996, the department verbally advised his counsel that plaintiff's appeal would be "withdrawn and dismissed without prejudice." While the wage act provided plaintiff the right to appeal to the circuit court the hearing referee's order of dismissal, MCL 408.481(9); MSA 17.277(11)(9), plaintiff averred that "[b]ased on this oral statement . . . Plaintiff did not further pursue his [wage act] claim."

Plaintiff thus did not appeal the administrative determination and order of dismissal regarding his wage act claim, but instead in November 1996 filed the instant circuit court action alleging (count I) defendant's breach of express and implied contracts, (count II) that defendant refused to pay plaintiff's commissions in violation of MCL 600.2961(4) and (5); MSA 27A.2961(4) and (5), and (count III) defendant's violation of the Employee Right to Know Act, MCL 423.501 *et seq.*; MSA 17.62(1) *et seq.*

Defendant sought summary disposition of counts I and II under MCR 2.116(C)(4) and (7). Defendant alleged that counts I and II represented the same claims for unpaid commissions that plaintiff raised before the department in his wage act claim, and that the department rejected in a final administrative determination. Defendant argued that the circuit court therefore lacked jurisdiction to consider counts I and II because plaintiff was prohibited from choosing to pursue his claims in a different, judicial forum after unsuccessfully seeking recompense from the department. Defendant also suggested that because a final administrative determination existed regarding plaintiff's claim for unpaid commissions, res judicata precluded relitigation of this issue in the circuit court.

Plaintiff countered that his November 1996 complaint asserted different common-law and statutory claims than his administrative claim, which raised only wage act violations, and that the circuit court possessed jurisdiction over all these separate claims. Plaintiff also suggested that res judicata would not preclude litigation of plaintiff's instant claims because the department's dismissal with prejudice did not constitute a final, binding determination regarding his claim and plaintiff never received the department's order of dismissal.

On June 19, 1997, the trial court granted defendant's motion for summary disposition. The court determined that counts I and II represented the same claims for unpaid commissions that plaintiff raised before the department. The court, citing dicta in *Murphy v Sears, Roebuck & Co*, 190 Mich App 384, 388; 476 NW2d 639 (1991), explained that plaintiff had the option to elect either the wage act's administrative remedy or other relief available at common law, but that once plaintiff chose to seek the administrative remedy, plaintiff had to pursue that remedy exclusively.[2]

II

Plaintiff contends that the trial court erred in granting defendant summary disposition because the court relied on the *Murphy* Court's nonbinding statement in dicta that "once an employee chooses to pursue the administrative remedy, that remedy must be utilized exclusively." *Id.*; see *Faulkner v Flowers*, 206 Mich

---

[2] On June 2, 1998, the court ordered dismissal of count III, apparently pursuant to the parties' agreement.

App 562, 566; 522 NW2d 700 (1994) (recognizing the quoted statement as dicta). We note that although defendant's brief on appeal urges that we decline consideration of claim preclusion issues, defendant invokes the cited *Murphy* dicta as the proper basis for our affirmation of the trial court's grant of summary disposition. While neither the trial court nor the *Murphy* opinion dicta expressly considered the doctrines of claim preclusion, we find that collateral estoppel represents the doctrine correctly applied in and controlling of the outcome of the instant case, and the basis for the *Murphy* Court's suggestion that "once an employee chooses to pursue the administrative remedy, that remedy must be utilized exclusively, including an appeal to the circuit court." *Murphy, supra* at 388.

> The preclusion doctrines serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims. By putting an end to litigation, the preclusion doctrines eliminate costly repetition, conserve judicial resources, and ease fears of prolonged litigation. Whether the determination is made by an agency or court is inapposite; the interest in avoiding costly and repetitive litigation, as well as preserving judicial resources, still remains.
>
> At issue in this case is the doctrine of collateral estoppel. Generally, "[f]or collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel."
>
> However, because defendant is seeking to preclude relitigation on the basis of an administrative decision, three additional requirements must be satisfied. The administrative determination must have been adjudicatory in nature and provide a right to appeal, and the Legislature must have

intended to make the decision final absent an appeal. [*Nummer v Dep't of Treasury*, 448 Mich 534, 541-542; 533 NW2d 250 (1995) (citations omitted).]

Application of a preclusion doctrine represents a question of law that we review de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999).[3]

While plaintiff denies that his wage act administrative claim is related to his instant breach of contract count and his claim under MCL 600.2961(4) and (5); MSA 27A.2961(4) and (5), plaintiff ignores that all three claims allege and seek reimbursement for defendant's wrongful retention of commissions owed plaintiff. Plaintiff's wage act claim asserted defendant's nonpayment of approximately $11,000 in commissions, bonuses, and illegal deductions. Plaintiff's instant complaint likewise alleges that when he left defendant's employ, defendant intentionally and unreasonably failed to provide plaintiff more than $10,000 in unpaid commissions and unauthorized deductions. The department's initial "Determination Order" expressly "determined that no wages are due" for the period plaintiff alleged defendant's nonpayment. Accordingly, the department clearly determined the fact essential to the instant action whether defendant unlawfully failed to provide plaintiff any outstanding commissions. See *Dearborn Heights School Dist No 7 v Wayne Co MEA/NEA*, 233 Mich App 120, 125; 592 NW2d 408 (1998) ("noting that a key determination concerning whether an earlier proceeding controls a later one is whether 'the same facts or evi-

---

[3] We also review de novo the trial court's summary disposition ruling. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

dence are essential to the maintenance of two actions' "), quoting *Jones v State Farm Mut Automobile Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993).

Every indication exists that plaintiff's alleged entitlement to unpaid commissions was " 'actually litigated and determined by a valid and final judgment.' " *Nummer, supra* at 542, quoting *Storey v Meijer, Inc*, 431 Mich 368, 373, n 3; 429 NW2d 169 (1988). Though the record does not reveal exactly when plaintiff retained counsel to represent him with respect to the wage act claim, the available record does indicate that by some point during the administrative proceedings both parties had retained counsel. *Nummer, supra*. Before the Wage Hour Division of the department's Bureau of Safety and Regulation initially determined the matter, the parties had the opportunity to submit evidence substantiating their positions, which the bureau then investigated before issuing the determination. MCL 408.481(2), (3); MSA 17.277(11)(2), (3). Moreover, plaintiff invoked his right to an appellate evidentiary hearing before a hearing referee, but then voluntarily dismissed the appeal. The referee's August 16, 1996, order dismissing plaintiff's wage act claim with prejudice represents an adjudication on the merits for claim preclusion purposes. *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997).

Plaintiff insists, however, that the department did not issue a final, binding determination. Plaintiff asserts that he requested that the hearing referee dismiss his wage act claim without prejudice, that neither he nor his attorney received or learned of the referee's dismissal with prejudice until defendant filed

its motion for summary disposition, and that therefore "it would be inequitable to preclude Plaintiff from obtaining a final adjudication of his case."[4] Even assuming plaintiff's allegations are true, no relevant issue of fact precludes a grant of summary disposition based on collateral estoppel.[5] Neither plaintiff's wish for a dismissal without prejudice nor the extent of plaintiff's knowledge concerning the referee's conclusion to enter an order of dismissal with prejudice alters the facts that both the administrative claim and the instant claims sought plaintiff's entitlement to commissions and that the referee's order dismissing plaintiff's administrative claim constitutes a final adjudication on the merits. See MCR 2.504,[6] *Brownridge v Michigan Mut Ins Co*, 115 Mich App 745, 748; 321 NW2d 798 (1982). Furthermore, we observe that "an *unappealed* [administrative agency's] determination . . . that plaintiff is not entitled to 'back pay' . . . operates as collateral estoppel to the subsequent maintenance of a suit in circuit court to recover the same reimbursement as 'damages' for breach of contract" when "the questions of fact necessary for

---

[4] We note that the "memorandum of transmittal" of the final order indicates that copies of the order were to be sent to both plaintiff and defendant and that at no time has plaintiff attempted to appeal the referee's order of dismissal.

[5] "Summary disposition on the basis of collateral estoppel . . . is pursuant to MCR 2.116(C)(7), and in considering a motion under that subrule, the court may consider all affidavits, pleadings, and other documentary evidence, construing them in the light most favorable to the nonmoving party." *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 246; 590 NW2d 586 (1998) (citations omitted).

[6] Even considering the hearing referee's order of dismissal as an involuntary dismissal with prejudice, MCR 2.504(B)(3) explains that "[u]nless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication on the merits."

determination of 'damages' by the circuit court . . . would be identical to questions of fact already determined by the [administrative agency] in concluding 'back pay' was improper." *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449, 453, 457-459; 249 NW2d 121 (1976) (emphasis added); see also *Champion's Auto Ferry, Inc v Public Service Comm,* 231 Mich App 699, 712; 588 NW2d 153 (1998) ("Collateral estoppel applies to *unappealed* administrative determinations that are adjudicatory in nature and where . . . a method of appeal is provided.") (emphasis added). To the extent plaintiff suggests that this Court should craft some equitable remedy for him, plaintiff does not explain this suggestion and cites no authority in support of it; therefore, we decline to further address it. *Mudge v Macomb Co,* 458 Mich 87, 105; 580 NW2d 845 (1998).[7]

Furthermore, both the administrative proceedings and the instant case involve the same parties, and mutuality of estoppel exists because it appears that defendant would have been bound by an administrative determination that it violated the wage act. *Barrow v Pritchard,* 235 Mich App 478, 481; 597 NW2d 853 (1999) ("Collateral estoppel is mutual if the one

---

[7] The Supreme Court in *Mudge, supra* at 105, quoted *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959), for the following proposition:

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow."

taking advantage of the earlier adjudication would have been bound by it, had it gone against him.").

In light of the department's consideration and investigation of information supplied by the parties in making its initial determination regarding the merits of plaintiff's claim, the department's initial determination appears adjudicatory in nature. See MCL 408.481(3); MSA 17.277(11)(3) ("If the department is unable to informally resolve the dispute, the department shall notify the employer and employee . . . . The notification shall include *a determination of the merits of the complaint* . . . .") (emphasis added). No indication exists that the initial determination occurred summarily or constituted a "decision to dismiss for 'insufficient evidence.' " *Nummer, supra* at 543, n 7. Moreover, MCL 408.481(4)-(7); MSA 17.277(11)(4)-(7), affords the parties to the administrative proceeding the opportunity for appellate review of the department's initial determination before a hearing referee, which appellate proceedings "shall be conducted pursuant to the procedures applicable to the trial of contested cases under . . . [MCL] 24.201 to 24.315[MSA 3.560(101) to 3.560(215)]." Subsection 9 makes available, circuit court judicial review of the hearing referee's conclusions.

Because the administrative proceedings plaintiff initially invoked are adjudicatory in nature and provide a method of appeal, the last consideration in determining whether the agency's action precludes the instant reconsideration of defendant's alleged liability for unpaid commissions becomes whether the Legislature clearly intended to make the agency's determination final in the absence of an appeal. *Storey, supra* at 373. In *Nummer, supra* at 545, the

Supreme Court examined whether the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, reflected the Legislature's intent concerning the finality of administrative proceedings involving it. The Court considered that the Legislature explicitly provided only one remedy from an adverse agency determination, a direct appeal to the circuit court, and that the Civil Rights Act otherwise contained no language concerning the preclusive effect of the Civil Rights Commission's findings or conclusions. *Nummer, supra* at 547, 551. The Court therefore concluded that the Legislature intended to permit only an appeal and that "[i]f the Legislature intended anything else, it would have said so more directly." *Id.* at 551.

In *Dearborn Heights, supra*, the plaintiff school district in 1994 filed a complaint concerning the defendant teacher with the State Tenure Commission, pursuant to the teacher tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.* The commission affirmed the hearing referee's preliminary decision that the defendant teacher had assaulted a colleague and ordered the defendant teacher to serve a three-semester suspension, which decision this Court subsequently affirmed. The defendant teacher's union then filed grievances alleging that the plaintiff's suspension of the defendant teacher violated the school district's collective bargaining agreement. The arbitrator revisited the defendant teacher's alleged misconduct, disregarding the commission's earlier decision and concluding that the defendant teacher did not commit a battery and should receive only a one-month suspension. The plaintiff then filed a circuit court complaint seeking to vacate the arbitrator's award. The defendant teacher's union filed a countercomplaint to

enforce the arbitration award. *Dearborn Heights, supra* at 122-123. This Court concluded that the defendant teacher and the union were "estopped from relitigating the commission's factual conclusion that [the defendant teacher] had intentionally struck a fellow teacher." *Id.* at 123. The Court discussed as follows whether the Legislature intended that the State Tenure Commission's factual determinations be final "in the absence of, or affirmance upon, an appeal":

> [E]ven if the teacher tenure act is silent concerning whether a determination by the [State Tenure C]ommission is to be given preclusive effect, in the absence of legislative intent to the contrary, the applicability of principles of preclusion is presumed. . . . [I]t is instructive that, pursuant to the Administrative Procedures Act, the only procedure available to a party aggrieved by a final decision of the commission is direct review by the courts. MCL 24.301; MSA 3.560(201). Because the appeal process, by its very nature, does not contemplate a new, original action, the commission's decision is clearly intended to be a final decision on the merits. . . . [The union's] position in this case would leave this Court in the precarious position of having two different panels issue two potentially opposing opinions concerning one factual issue. Such circumstances are but one type of the "repetitious and needless litigation" that the doctrine of collateral estoppel is designed to prevent. [*Dearborn Heights, supra* at 129-130, quoting *Storey, supra* at 372.]

In this case, the wage act expressly provides only for appellate judicial review of the hearing referee's determinations, MCL 408.481(9); MSA 17.277(11)(9), and does not reflect any legislative intent to limit the preclusive effect of administrative wage act determinations. We therefore conclude that, as in *Nummer, supra,* and *Dearborn Heights, supra,* the Legislature

intended to make the department's administrative determination final absent an appeal.

As this Court in *Murphy, supra,* observed, plaintiff need not have pursued his commissions in the form of an administrative wage act claim. See also *Cork v Applebee's of Michigan, Inc,* 239 Mich App 311, 318; 608 NW2d 62 (2000) (explaining the *Murphy* Court's holding that where a plaintiff seeks enforcement of a common-law right, such as a breach of contract claim, the statutory remedy is cumulative, not exclusive). Once the issue of defendant's liability for these commissions proceeded to an adverse administrative adjudication on the merits, however, collateral estoppel precluded plaintiff's subsequent resort to the circuit court except through the wage act's direct appeal provision. MCL 408.481(9); MSA 17.277(11)(9). Our failure under the instant circumstances to apply collateral estoppel would sanction multiplicity of litigation and the absolutely unnecessary waste of precious judicial resources. See *Dearborn Heights, supra* at 128, 130-131.[8]

---

[8] This Court previously and astutely observed the following with respect to the policies behind application of collateral estoppel:

Where resolution of a controversy involves both an administrative hearing and a statutorily recognized arbitration procedure, the latter should supplement, not obviate, the former. If a teacher were allowed to relitigate a factual question previously decided by the commission, it would reduce the administrative process to a mere rehearsal; an employee satisfied with the commission's findings could accept them, while a dissatisfied employee could start over with a clean slate by bringing the matter before an arbitrator. Although surely most dissatisfied litigants would enjoy a second bite at the apple, our system disfavors resort to successive litigation to resolve identical issues.

*       *       *

Because collateral estoppel precludes plaintiff's instant claims, summary disposition was proper pursuant to MCR 2.116(C)(7). *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 246; 590 NW2d 586 (1998). Although the trial court did not delineate the proper basis for its ruling granting defendant summary disposition, we nonetheless will affirm the trial court's achievement of the correct result. *Kosmyna v Botsford Community Hosp*, 238 Mich App 694, 701; 607 NW2d 134 (1999).

Affirmed.

A teacher alleging wrongful termination or other adverse action typically has her choice from among multiple forums and causes of action to vindicate her rights. . . . The question here is, if the teacher chooses a forum, loses on the central claim, then appeals unsuccessfully to this Court, may she then relitigate her claim in a new forum? May she get a second bite at the apple? Further, if a litigant had the right to a second forum to adjudicate her rights without risk that the first adjudication were binding, one must ask, why not a third or fourth try after losing two or three times? These questions, of course, underscore the importance of finality in litigation. In this case, allowing the arbitrator to decide de novo a factual question already resolved by the commission and affirmed by this Court would invite an incongruous outcome. [*Dearborn Heights, supra* at 128, 130-131 (citations omitted).]