*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SAMANTHA BATES,

          *Plaintiff-Appellant,*

    *v.*

TOWNSHIP OF VAN BUREN,

          *Defendant-Appellee.*

No. 05-2137

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73692—Avern Cohn, District Judge.

Argued: July 20, 2006

Decided and Filed: August 21, 2006

Before: GILMAN and COOK, Circuit Judges; DOWD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael L. Donaldson, Livonia, Michigan, for Appellant. James N. McNally, SOMMERS SCHWARTZ, Southfield, Michigan, for Appellee. **ON BRIEF:** Michael L. Donaldson, Livonia, Michigan, for Appellant. James N. McNally, Patrick B. McCauley, David J. Szymanski, SOMMERS SCHWARTZ, Southfield, Michigan, for Appellee.

    COOK, J., delivered the opinion of the court, in which DOWD, D. J., joined. GILMAN, J. (pp. 7-8), delivered a separate dissenting opinion.

_____

## OPINION

_____

    COOK, Circuit Judge. Samantha Bates, a topless dancer at Leggs Lounge in the Township of Van Buren, Michigan, filed this § 1983 action challenging a town ordinance that prohibited nudity at "any establishment licensed or subject to licensing by the Michigan Liquor Control Commission." The district court stayed her case until the Michigan Court of Appeals—in an action to enjoin the bar's owner, The Garter Belt, Inc., from violating the ordinance—rejected the defense that the ordinance was unconstitutional. The district court then lifted the stay on this case and dismissed

_____

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1

Bates's claims as res judicata.  We find that the district court correctly applied the Michigan law of res judicata, and we accordingly affirm.

I.

On March 2, 1999, the Township of Van Buren enacted Ordinance 2-16-99(2), providing as follows:

Nudity on Licensed Premises.

(a)      No person, while appearing in a state of nudity as defined by this section, shall frequent, loiter, work for, or perform in any establishment licensed or subject to licensing by the Michigan Liquor Control Commission.  No proprietor or operator of any such establishment shall allow the presence in such establishment of any person who violates the provisions of this section.

(b)      "Nudity" shall be defined to be the exposure by view of persons, of any of the following body parts, either directly or indirectly, including but not limited to exposure, see-through clothing articles or body stockings:

(1)      the whole or part of the pubic region;

(2)      the whole or part of the anus;

(3)      the whole or part of the buttocks;

(4)      the whole or part of the genitals;

(5)      the breast area including nipple, or more than one-half of the area of the breast.

In November 2000, the township sought a permanent injunction requiring The Garter Belt to comply with the ordinance ("*Garter Belt I*").  The bar removed the case to federal court and filed a separate federal case challenging the constitutionality of the ordinance ("*Garter Belt II*").  The district court remanded *Garter Belt I* and abstained from (and dismissed) *Garter Belt II* on the basis of *Younger v. Harris*, 401 U.S. 37 (1971), and in doing so rejected The Garter Belt's argument that abstention was inappropriate because it would preclude, at least until a writ of certiorari was granted by the Supreme Court, federal review of its constitutional claims.  After the Sixth Circuit affirmed, *Garter Belt I* was heard in state court.  The Wayne County Circuit Court upheld the statute's constitutionality and issued a permanent injunction against the bar; the Michigan Court of Appeals affirmed, *Charter Twp. of Van Buren v. Garter Belt, Inc.*, 673 N.W.2d 111 (Mich. Ct. App. 2003), and the Michigan Supreme Court denied leave to appeal, 682 N.W.2d 86 (Mich. 2004).  The United States Supreme Court denied certiorari.  543 U.S. 1002 (2004).

While the *Garter Belt I* litigation was proceeding, Bates filed this 42 U.S.C. § 1983 action in federal district court challenging the constitutionality of the ordinance.  The case was stayed until certiorari was denied in *Garter Belt I*.  The court then lifted the stay and requested briefing on "the impact of the state court's decision [in *Garter Belt I*] on Bates's claims and whether any doctrine(s) bar(s) [Bates] from litigating her claims in this forum."

The district court barred Bates's action as res judicata.  Although different parties were involved in the actions, in Michigan res judicata bars a subsequent action by the "same parties or their privies." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).  The court held that Bates and The Garter   Belt   were   in   privity   in   part   because   they   had   a   "'substantial   identity   of

interests'"—specifically, "that the ordinance be struck down on constitutional grounds." *Id.* (citation omitted). Bates timely appealed.[1]

## II.

The application of res judicata is a question of law that we review de novo. *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

The "Full Faith and Credit statute," 28 U.S.C. § 1738,[2] requires federal courts in a § 1983 action to give state court judgments the same preclusive effect those judgments would have in the rendering state's courts. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-82 (1984). The Michigan Supreme Court "has taken a broad approach to the doctrine of res judicata," determining that it "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair*, 680 N.W.2d at 396. The doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

Bates challenges only the district court's finding that she is in privity with The Garter Belt.

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a "substantial identity of interests" and [2] a "working functional relationship" in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Id.* (citations omitted).

In *Adair*, the Michigan Supreme Court barred as res judicata a challenge by taxpayers and school districts to the state's education funding plan. The Michigan Constitution required that the state neither (1) decrease its funding for mandated activities and services nor (2) impose new unfunded mandates on local school districts. After several rounds of litigation concerning the first requirement, a new group of plaintiffs, including some school districts and taxpayers that had not been party to the first litigation, challenged the state funding plan as not complying with the second requirement. The Michigan Supreme Court dismissed the subsequent claims on the ground that they could have been reached in the earlier suit.

The court held that the plaintiffs who were not parties in the earlier litigation had "identical" interests to those who were because each sought the same declaratory relief.

---

[1] On November 15, 2005, a panel of this circuit denied Bates's motion to remand her case to the district court for reconsideration in light of *Odle v. Decatur County, Tennessee*, 421 F.3d 386 (6th Cir. 2005), and *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 421 F.3d 417 (6th Cir. 2005). *Bates v. Twp. of Van Buren*, No. 05-2137 (6th Cir. Nov. 15, 2005). The panel noted, "Upon consideration, we conclude this argument [regarding *Odle* or *Deja Vu*] should be presented as part of the merits of this appeal." In *Odle*, the court struck down as unconstitutionally overbroad a Tennessee county ordinance that "prohibit[ed] nudity and sexually suggestive conduct at a wide range of public places where alcohol is sold, served, or consumed" on the ground that the county failed to support the breadth of the ordinance. 421 F.3d at 388. In *Deja Vu*, the court affirmed the principle that *Odle* should be given retroactive effect in all cases on direct review. 421 F.3d at 420. Neither case concerned Michigan's res judicata rules. Because we affirm the district court's judgment on that basis, we do not address *Odle*, *Deja Vu*, or in any other way the merits of Bates's claims.

[2] "The records and judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

> In litigation concerning the [Michigan Constitution's educational funding provisions], where a taxpayer or a local unit of government is suing the state, the issue is whether the Legislature's act is unconstitutional as it applies not just to a single local unit of government, but to all local units affected by the legislation. *In such cases, the interests of all similar local units of government and taxpayers will almost always be identical.* If the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another, such as when declaratory relief is sought concerning an act of the Legislature establishing the proportion of state funding for local government units, the interests are identical.

*Id.* (emphasis added). Notwithstanding that the second group of plaintiffs were challenging the funding plan under a different constitutional provision, the court held that privity existed because each group of plaintiffs sought to have the state's funding plan declared unconstitutional.

The court in *Adair* did not explain how the parties maintained a "working functional relationship," the second component of the test for privity, and thus it is hard to see what force the requirement retains. (In contrast, the court did summarily assert that the interests of the nonparty were "presented and protected" in the first litigation, the third component of the test for privity.) *Adair* cited *Phinisee v. Rogers*, 582 N.W.2d 852, 854-55 (Mich. Ct. App. 1998), in which the court held that an illegitimate child's paternity claim was not barred as res judicata by her mother's failed paternity suit because the mother and daughter did not share a substantial identity of interests.[3] The court in *Phinisee* quoted a definition of privity in which the parties' having an actual relationship was a *disjunctive* requirement from their having an identity of interests:

> [Privity consists in] mutual or successive relationships to the same right of property, *or* such an identification of interest of one person with another as to represent the same legal right. . . . [It] signifies that [the] relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon [the] other, although [the] other was not a party to lawsuit.

Black's Law Dictionary 1199 (6th ed. 1990) (emphasis added).[4] Though it is not essential to our holding, we are confident that *Adair*'s requirement of a "working functional relationship" may be satisfied by "an identification of interest of one person with another as to represent the same legal right." *Id.*

Bates's case satisfies each of the components discussed in *Adair*. First, Bates and The Garter Belt had a substantial identity of interests because each sought a facial invalidation of the ordinance. It is of no moment that The Garter Belt was a defendant in the earlier action whereas Bates is a plaintiff here; *Adair* speaks of "interests," and offers only as an *example* of parties with identical interests those who seek the same relief. Accordingly, *Adair* has often been invoked to bar later actions by parties who were previously defendants (or their privies) notwithstanding that they sought no relief in the earlier cases. *See, e.g.*, *Reed v. City of Detroit*, No. 247557, 2005 Mich. App. LEXIS 172 (Mich. Ct. App. Jan. 27, 2005) (unpublished) (barring action by a subsequent owner—*i.e.*, a privy of the prior owner—against the city based upon earlier tax foreclosure action against the prior owner). Nor do Bates's interests diverge from The Garter Belt's because she seeks damages in

---

[3] *See Phinisee*, 582 N.W.2d at 855 ("We also agree with those courts that have recognized that an illegitimate child's interests in establishing paternity, which may extend not only to immediate support payments but also to future social security benefits and inheritance through the biological father, differ from the mother's interests in establishing paternity, which may be focused more on immediate financial concerns.").

[4] In contrast, the Fourth Edition defined privity as simply "Mutual or successive relationships to the same rights of property." Black's Law Dictionary 1361 (rev. 4th ed. 1968).

addition to declaratory relief.  The only *basis* she alleges for such damages is the ordinance's facial unconstitutionality, so the substance of her complaint remains on all fours with The Garter Belt's defense in the earlier action.  Second, Bates and The Garter Belt, the only club where she danced, had no less a "working functional relationship" than did the parties considered in *Adair*.  Third, Bates's interests were presented and protected by The Garter Belt in the previous litigation.  Had The Garter Belt avoided the injunction in any way, Bates would have been free to dance as she had before the ordinance's passage.  And had The Garter Belt prevailed in its defense that the ordinance was facially unconstitutional, Bates would have had no reason to seek the same declaration.

Indeed, the case for privity is stronger here than it was in *Adair*, as Bates not only seeks the same declaration that the Michigan courts refused to make, but also prays for that relief with arguments identical to those that the Michigan courts rejected.  In *Garter Belt I*, The Garter Belt opposed the injunction by arguing (among other things) that "the township's prohibition of nudity in establishments that serve alcohol [was] unconstitutionally overbroad."  673 N.W.2d at 132.  And, as Bates's briefs make clear, and as her counsel confirmed at oral argument, Bates's *only* challenge is that the ordinance is overbroad.  The Michigan courts rejected The Garter Belt's arguments that the ordinance would improperly prohibit plunging necklines, thong bikinis, and semi-nude theatrical performances such as *Hair*, *Oh! Calcutta*, *Salome*, and *Dance of the Seven Veils*.  673 N.W.2d at 132-34.  Bates now asks this court to find the ordinance unconstitutional because it would prohibit plunging necklines, thong bikinis, and *Hair*, *Oh! Calcutta*, *Salome*, and *Dance of the Seven Veils*. (*See* Bates Br. 33.)  There is simply no way to consider her arguments without revisiting the very matter the Michigan courts decided and the United States Supreme Court refused to review.

Finally, we reject Bates's two arguments contesting the application of the doctrine of res judicata to bar her claims.  First, Bates contends that in *Dearborn Heights Sch. Dist. v. Wayne County MEA/NEA*, 592 N.W.2d 408 (Mich. Ct. App. 1998), Michigan adopted the rule expressed by this court in *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1070 (6th Cir. 1995), that res judicata requires "the existence of an express or implied legal relationship in which the parties to [the] first suit are accountable to the nonparties who file a subsequent suit raising identical issues."  *Dearborn Heights*, however, was published six years before *Adair* and cited *Becherer* only for the generic proposition that "a nonparty to an earlier proceeding will be bound by the result if that party controlled the earlier proceeding or if the party's interests were adequately represented in the original matter."  592 N.W.2d at 412.  And *Becherer* itself did not purport to interpret Michigan law.  *Adair* is the operative precedent, and it does not require there be an "express or implied legal relationship" making one party accountable to the other before an action is barred as res judicata.

We also reject Bates's contention that her claim should not be barred because her interests were not "actually presented" in *Garter Belt I*.  As noted above, we see no daylight between Bates's interests—as expressed in this overbreadth challenge—and those represented by The Garter Belt in its defense that the statute was unconstitutionally overbroad.  Moreover, if Bates's complaint is that particular *arguments* were not raised in the prior litigation, then it may be rejected on the ground that res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."  *Adair*, 680 N.W.2d at 396.  We remain convinced that Bates's interests were presented and protected in the prior litigation.

As a final point, we note that Bates has not challenged Michigan's res judicata doctrine as unconstitutional under *Richards v. Jefferson County*, 517 U.S. 793 (1996).  In *Richards*, the Court held that a state court's "extreme" application of state res judicata principles to bar a "stranger" to a previous judgment from pursuing her constitutional claims deprived that party of Fourteenth Amendment due process.  517 U.S. at 797, 802.  *Richards* did not concern a series of facial

challenges, so it is quite possibly distinguishable from this case.  Either way, the issue is not properly before the court, as Bates has not raised the argument.

III.

We affirm the district court's dismissal of Bates's action as res judicata under Michigan law. Bates's case is ultimately doomed by the federalism interests expressed in the Full Faith and Credit statute, 28 U.S.C. § 1738, and, as the Supreme Court has recently reiterated, federal courts may not fashion exceptions to § 1738 to provide a federal forum to plaintiffs who otherwise would be without one.  *See San Remo Hotel v. City and County of San Francisco*, 545 U.S. 323 (2005).

––––––––––––––––––

**DISSENT**

––––––––––––––––––

RONALD LEE GILMAN, Circuit Judge, dissenting.  The majority's decision in this case leads to an unnecessarily broad and perverse result—that once the Michigan courts have determined that a state statute complies with the federal Constitution, the federal courts are precluded from ever passing on the issue.  In applying Michigan's res judicata principles, the majority extends the case of *Adair v. State of Michigan*, 680 N.W. 2d 386 (Mich. 2004), to encompass any plaintiff who mounts a facial challenge to The Township's nudity ban.  Although I agree with the majority that we must apply Michigan's res judicata principles, I disagree with the majority's interpretation of *Adair*.  I do not believe that all subsequent plaintiffs who might wish to challenge The Township's nudity ordinance should be precluded on the basis of res judicata from seeking a federal ruling on whether the ordinance violates the First Amendment.  The majority's holding is especially unsatisfying in this case because this circuit has recently held that a similar Tennessee nudity ban was unconstitutionally overbroad.  *See Odle v. Decatur County, Tennessee*, 421 F.3d 386 (6th Cir. 2005) (overturning an ordinance that "prohibits, among other things, nudity and the performance of a wide range of arguably sexually suggestive acts in 'public places where intoxicating liquors are offered for sale, served or consumed'").

In *Adair*, the Michigan Supreme Court held that privity requires a "'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation."  680 N.W. 2d at 396.  Applying this test, the *Adair* Court held that similarly situated school districts and taxpayers were in privity because they all sought to "establish[] the proportion of state funding for local government units" and to ensure that "mandated activities are funded as they are required to be under the Headlee Amendment."  *Id.* at 396-97 (italics omitted).

The majority in the case before us interprets *Adair* to stand for the proposition that all plaintiffs who facially challenge the same ordinance are in privity for res judicata purposes.  *See* Maj. Op. at p. 4 ("Bates and The Garter Belt had a substantial identity of interests because each sought a facial invalidation of the ordinance.")  It also denigrates the "working functional relationship" prong of *Adair* by commenting that "it is hard to see what force the requirement retains," Maj. Op. at p. 4, and conflates the two prongs of Michigan's test for privity by allowing the "relationship" prong to "be satisfied by an identification of interest of one person with another as to represent the same legal right."  *Id.*  (citation and quotation marks omitted).

I do not believe that the majority has properly interpreted *Adair*.  In *Adair*, the local school districts did not challenge the facial constitutionality of an ordinance; they instead sought a ruling on whether one specific defendant—the state—was complying with the requirements of the Michigan Constitution, and specifically pursued a determination of which programs must be funded by the state.  This resembles an "as-applied" challenge far more than a facial challenge.  Each school district essentially stood in each other's shoes with respect to enforcing funding requirements against the state.

In addition, the majority opinion glosses over a key portion of *Adair's* reasoning, which reads as follows:

> We find that the school districts . . . also have the same legal interest protected by the *Duran I* plaintiffs and are similarly in privity.  In this case, *particularly because only declaratory relief, not damages, was sought*, it is evident that all school districts have the same interest."

*Adair*, 680 N.W. 2d at 397 (emphasis added).  In other words, the local school districts were in privity with each other for res judicata purposes because they all sought the same legal relief; namely, a declaratory judgment regarding mandated funding requirements under the Michigan Constitution.  *See id.* at 396 (holding that interests are identical if "the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another").

In the present case, however, Bates and The Garter Belt did not seek the identical legal relief. The Garter Belt invoked the First Amendment as a defense in order to prevent The Township from requiring The Garter Belt to comply with its nudity ordinance. *Charter Twp. of Van Buren v. Garter Belt, Inc.*, 258 Mich. App. 594, 597 (Mich. App. 2003).  Bates, in contrast, seeks not only a declaration that The Township's nudity ban is unconstitutional, but also $50,000 in compensatory damages.  The majority argues that Bates's damages claim does not render this case distinguishable from *Adair* because "[t]he only *basis* [Bates] alleges for such damages is the ordinance's facial unconstitutionality."  Maj. Op. at p. 5 (emphasis in original).  This proves too much, however, because individual damages always flow from the violation of the legal right at issue.

I believe that the decision in *Adair* stemmed from the fact that a declaratory judgment was the only relief sought by the various school districts.  680 N.W. 2d at 397.  A party seeking damages, however, has a qualitatively different interest than a party seeking only declaratory relief.  *Cf. Phinisee v. Rogers*, 582 N.W.2d 852, 855 (Mich. Ct. App. 1998) (holding that an illegitimate child's interest in establishing paternity is not substantially identical to her mother's interest because "an illegitimate child's interests in establishing paternity, which may extend not only to immediate support payments but also to future social security benefits and inheritance through the biological father, differ from the mother's interests in establishing paternity, which may be focused more on immediate financial concerns").  In addition, the majority's opinion unnecessarily eviscerates the "working functional relationship" portion of *Adair's* preclusion test, even though Bates and The Garter Belt literally possessed a working relationship.

Because the Michigan Supreme Court recognizes that its ruling in *Adair* represents the "outer limit of the doctrine" of res judicata, 680 N.W. 2d at 396, I would decline to apply *Adair* in a case that is distinguishable on multiple grounds.  In my opinion, the more prudent course would be to avoid increasing the already broad scope of *Adair*, whose holding may raise due process concerns that Bates has not sought to pursue.  I therefore respectfully dissent.