# STATE OF MICHIGAN

# COURT OF APPEALS

BARRY ELLENTUCK,

Plaintiff-Appellant,

v

JEFFREY W. HUNTINGTON, MICHELE
WILDMAN, MARY CAROLYN LEWAND-
MONROE, also known as MARY CAROLYN
LEWAND and MARY CAROLYN MONROE,
BRIAN FARKAS, MARTHA H. DELGADO,
ALEXIS WILEY, JAMES JOSEPH WRIGHT,
and JOHN BUCK,

Defendants-Appellees.

UNPUBLISHED
September 11, 2018

No. 337953
Oakland Circuit Court
LC No. 2016-155274-CZ

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Barry Ellentuck, appeals as of right the trial court's March 31, 2017 opinion and order granting the motions for summary disposition filed by defendants, Jeffrey W. Huntington, Michele Wildman, Mary Carolyn Lewand-Monroe (also known as Mary Carolyn Lewand and Mary Carolyn Monroe), Brian Farkas, Martha H. Delgado, Alexis Wiley, James Joseph Wright, and John Buck. [1] Plaintiff contends that the trial court erred when it granted defendants' motions for summary disposition because the trial court improperly ruled that plaintiff's intentional tort

---

[1] As discussed below, plaintiff's complaint named one additional defendant, Timothy McCarthy. Per the register of actions, McCarthy never filed an answer to plaintiff's complaint or entered an appearance in the trial court. Plaintiff did not seek a default judgment against McCarthy, as the only default judgment plaintiff sought was against Wiley, and that default was later set aside by stipulation of plaintiff and Wiley. Nonetheless, the trial court's opinion and order indicated that it "resolve[d] the last pending claim and close[d] the case." Regardless, plaintiff does not challenge the finality of the trial court's opinion and order, or raise any issue pertaining to McCarthy on appeal.

-1-

claims were barred by collateral estoppel, governmental immunity, and witness immunity. We affirm.

This case arises from plaintiff's work through his company, ADR Consultants, LLC (ADR), regarding the removal of blighted housing in the city of Detroit. In August 2012, plaintiff, on behalf of ADR, signed a contract with the Michigan Land Bank Fast Track Authority ("MLB"), wherein ADR was "to provide technical assistance and project management services to the MLB" relating to "blight elimination efforts" in Detroit. Those services included,

> demolition contract management; establishing and monitoring demolition budgets and drafting requisite reports; assisting in the implementation of a comprehensive parcel data system; assisting in identifying public and private property for acquisition, maintenance, or security; assisting in the implementation of property maintenance programs; assisting in identify [sic] cost savings for deliverables.

ADR's contract with the MLB clarified that "[t]he services may be performed by MLB/State employees, State contractors, Contractor, or subcontractors as determined by the MLB."

In November 2013, the MLB and the Detroit Land Bank Authority ("DLBA") entered into an Intergovernmental Agreement ("IGA") in order to provide the DLBA "with project management assistance in carrying out" the DLBA's "participation" in "the Michigan Homeowner Assistance Housing Corporation's (MHA) Help for the Hardest Hit Blight Program (BEP) . . . ."

According to plaintiff's complaint, in December 2015, plaintiff "was charged in the 48th District Court [("the district court")] with the felony crime of attempted false pretenses of more than $1,000 [("attempted false pretenses[2]")]." A preliminary examination relating to the criminal proceeding against plaintiff was held in February 2016, and the district court ultimately granted the prosecution's "motion to bind over" plaintiff. The trial pertaining to the criminal charge against plaintiff began in July 2016 in the Oakland Circuit Court ("the circuit court"), and ultimately, a jury acquitted plaintiff.

In September 2016, plaintiff filed his complaint in this matter. Plaintiff's complaint identified defendants who he alleged were "current or former employee[s], agent[s], officer[s] or director[s]" of various organizations: (1) Huntington, who was associated with the MLB or the Michigan State Housing Development Authority ("MSHDA"); (2) Wildman, who was associated with the MLB or the MSHDA; (3) Lewand-Monroe, who was associated with the DLBA; (4) Farkas, who was associated with the Detroit Building Authority ("DBA"); (5) Delgado, who was associated with the DLBA; (6) Wiley, who, as discussed above, was associated with the "Office of the Mayor" of Detroit; (7) Wright, who was associated with the DBA; and (8) Buck, who was associated with the State of Michigan Office of the Attorney General, but who was only alleged

---

[2] While not cited by plaintiff in his complaint, plaintiff appears to have been specifically charged with one count of attempted false pretenses involving a value of $1,000 or more but less than $20,000, MCL 750.92; MCL 750.218(4)(a).

to be a "current or former employee or agent" of that organization. As noted above, plaintiff's complaint also identified one additional defendant, Timothy McCarthy, and plaintiff alleged that McCarthy was "a former employee and contractor to ADR . . . ."

In his complaint, plaintiff explained that ADR had been "in the employ of MLB, MSHDA and DLBA and [sic] performing blight demolition management, oversight and inspections in and around the State of Michigan, and predominantly in the City of Detroit." He alleged that he "had raised his objection to certain practices being implemented by the blight program authorities, including the apparent practice of awarding what amounted to no-bid contracts to subcontractors." However, "rather than investigate or otherwise address [plaintiff's] concerns, the Defendants, upon information and belief, engaged in a concerted effort to ruin [plaintiff] both privately and publicly by putting forth patently false allegations against him that he had personally attempted to overbill the DLBA for work not performed by his company via the MLB/MSHDA/DLBA blight demolition program." Specifically, plaintiff alleged that McCarthy

> fabricated, misrepresented and otherwise mischaracterized discussions and/or meetings with [plaintiff] during his employment and contracting period with ADR and alleged to third parties, including the other Defendants, the State of Michigan Attorney General's Office and law enforcement officials that [plaintiff] had directed him to falsify ADR time and billing record documents in an effort to overbill DLBA by more than 115 hours.

Plaintiff alleged that defendants either solicited McCarthy's statements, or that they knew McCarthy's statements were false and subsequently contributed their own false statements in support of the investigation into plaintiff. Therefore, plaintiff alleged that his charge of attempted false pretenses was "brought, upon information and belief, following discussions, plans, actions and agreements between and among the Defendants in a concerted effort to damage, discredit, embarrass, or otherwise eradicate [plaintiff's] personal reputation and business status." Defendants filed motions for summary disposition as their first responsive pleadings, and the trial court ultimately granted their motions for summary disposition on the grounds of collateral estoppel, witness immunity, and governmental immunity.

Plaintiff argues that the trial court erred when it granted defendants' motions for summary disposition because his claims were not barred by collateral estoppel, witness immunity, or governmental immunity. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). A trial court may properly grant summary disposition under MCR 2.116(C)(7) if a claim is precluded by collateral estoppel. *Minicuci v Scientific Data Mgt, Inc*, 243 Mich App 28, 42; 620 NW2d 657 (2000). Similarly, "[u]nder MCR 2.116(C)(7), an order granting a motion for summary disposition in favor of a defendant is proper when the plaintiff's claim is 'barred because of . . . immunity granted by law . . . .' " *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011), citing *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). Under MCR 2.116(C)(7), "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

"The applicability of legal doctrines such as res judicata and collateral estoppel are questions of law to be reviewed de novo." *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555-556; 540 NW2d 743 (1995), aff'd sub nom *Husted v Dobbs*, 459 Mich 500 (1999) (citation omitted). "The applicability of immunity is a question of law that is likewise reviewed de novo on appeal." *Denhof v Challa*, 311 Mich App 499, 510; 876 NW2d 266 (2015), citing *Snead*, 294 Mich App at 354.

As explained by this Court, "[c]ollateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding," and "[t]he doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) (citations omitted). "Collateral estoppel is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014) (citation omitted).

"Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel." *Id*., citing *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004). "In the subsequent action, the ultimate issue to be concluded must be the same as that involved in the first action," and "the common ultimate issues must have been both actually and necessarily litigated." *Rental Props Owners Ass'n of Kent Co*, 308 Mich App at 529 (citations omitted). "To be actually litigated, a question must be put into issue by the pleadings, submitted to the trier of fact, and determined by the trier." *Id*. (citation omitted). Additionally, "[t]he parties must have had a full and fair opportunity to litigate the issues in the first action." *Id*. (citation omitted).

"[W]here collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat*, 469 Mich at 695. "Crossover estoppel, which involves the preclusion of an issue in a civil proceeding after a criminal proceeding and vice versa, is permissible." *Barrow v Pritchard*, 235 Mich App 478, 481; 597 NW2d 853 (1999), citing *In re Forfeiture of $1,159,420*, 194 Mich App 134, 145-146; 486 NW2d 326 (1992). There is no requirement that the prior judgment was the result of a trial, but the parties must have had a full opportunity to litigate the issue in the previous proceeding. See *Nummer v Treasury Dep't*, 448 Mich 534, 542, 556; 533 NW2d 250 (1995) (holding that collateral estoppel could be applied based on an administrative decision so long as the issue was fairly and fully litigated).

As alleged by plaintiff in his complaint, plaintiff was criminally charged with one count of attempted false pretenses. The district court later bound defendant over on that charge in February 2016, based on a finding of probable cause. Plaintiff was ultimately acquitted by a jury in July 2016. In his complaint, plaintiff raised 10 claims against defendants and McCarthy, which were: (1) malicious prosecution, (2) abuse of process, (3) defamation, (4) defamation per se, (5) intentional infliction of emotional distress, (6) invasion of privacy – false light, (7) false arrest, (8) tortious interference with business relationships "and/or" expectancies, (9) concert of

action, and (10) civil conspiracy. The trial court ultimately granted defendants' motions for summary disposition in part based on collateral estoppel because "the prior determination in the District Court that there was probable cause to bind [plaintiff] over following the preliminary exam was a final adjudication on the merits of probable cause," and that a "lack of probable cause [was] an essential element in all of the intentional tort claims. . . ."

Plaintiff first argues, in cursory fashion, that there are "starkly different standards between a probable cause determination and a civil action" and that the district court gave "a blatantly incorrect amount of weight to the probable cause hearing itself." Plaintiff provides no legal authority in support of his argument, nor any further explanation as to how he has arrived at this conclusion. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Therefore, plaintiff has abandoned that specific contention.

Second, plaintiff argues that the trial court erred when it concluded that the district court's finding of probable cause at the close of plaintiff's preliminary examination was a "final judgment" because the district court lacked "jurisdiction" to make any final judgments related to a felony charge. Rather, the function of a preliminary examination is only for a district court to confer jurisdiction to a circuit court based upon a finding of probable cause. Plaintiff's arguments fail.

MCR 6.110(E) provides, in relevant part:

If, after considering the evidence, the court determines that probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it, the court must bind the defendant over for trial.

"The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it." *People v Redden*, 290 Mich App 65, 83; 799 NW2d 184 (2010) (quotation marks and citation omitted). "With regard to preliminary examinations, MCL 766.12 permits 'witnesses for the prisoner, if he [has] any, [to] be sworn, examined and cross-examined,' and MCR 6.110(C) permits '[e]ach party [to] subpoena witnesses, offer proofs, and examine and cross-examine witnesses at the preliminary examination.' " *Id*. at 84 n 9 (alterations in original).

Plaintiff's preliminary examination pertained to only one issue: whether there was probable cause to bind plaintiff over on the charge of attempted false pretenses, and the district court ultimately determined that there was. Plaintiff was presented with an opportunity to offer proofs, present witnesses, and cross-examine adverse witnesses. MCL 766.12; MCR 6.110(C). Therefore, the first two requirements for the application of collateral estoppel on the issue of probable cause have been met. With regard to the third requirement, mutuality of estoppel, mutuality of estoppel is not required "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue . . . ." *Monat*, 469 Mich at 695. Here, collateral estoppel was asserted defensively against plaintiff, and

therefore, mutuality of estoppel is not required because, as discussed above, plaintiff had a full and fair opportunity to litigate the issue of probable cause in the district court.

Therefore, the trial court did not err when it ruled that plaintiff's contentions regarding a lack of probable cause by defendants were properly barred by collateral estoppel. Nonetheless, plaintiff asserts that a decision to bind a defendant over on a finding of probable cause is not a "final judgment," and that a preliminary examination is "merely a statutory mechanism to ultimately vest jurisdiction in the circuit court." Yet, plaintiff's assertion rests on the proposition the district court lacked jurisdiction over the adjudication of any felony charge. However, plaintiff explains in his brief on appeal that under MCL 600.8311(e), a district court has jurisdiction over "[p]reliminary examinations in all felony cases and misdemeanor cases not cognizable by the district court . . . ." Therefore, the district court clearly had statutory jurisdiction over the issue of whether there was probable cause to bind plaintiff over for trial.

Plaintiff also argues that a "preliminary examination is not a final decision on the merits, and does not finally determine a defendant's guilt or innocence and does not carry the effect of res judicata."[3] With regard to plaintiff's first two arguments, there was no suggestion by either the trial court or defendants that plaintiff's bindover was a final decision on the merits of plaintiff's actual innocence or guilt of the charged conduct. Indeed, the district court was required to determine whether there was probable cause to bind plaintiff over for trial.

In support of his specific contention that a decision following a preliminary examination is not a "final decision on the merits," plaintiff relies on two decisions of this Court that were decided before November 1, 1990, and therefore, are not binding on this Court under MCR 7.215(J)(1). See *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012), citing *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 444 n 4; 773 NW2d 29 (2009) (noting that while "cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority"). Moreover, neither case is dispositive or on point regarding this issue. See *People v George*, 114 Mich App 204, 207; 318 NW2d 666 (1982) (stating in dicta that the prosecutor has correctly noted that "the doctrines of collateral estoppel and res judicata bar a prosecutor from proceeding against an accused by bringing a second complaint and warrant after the first has been dismissed"); *People v Riley*, 72 Mich App 299, 302; 249 NW2d 397 (1976) (holding that the dismissal of a defendant's charges on procedural grounds at the close of a preliminary examination did not bar the prosecution from refiling charges against the defendant because there was not an adjudication on the merits).

Notably, plaintiff does not contend that the trial court erred when it ruled that a "lack of probable cause [was] an essential element in all of the intentional tort claims. . . ." Plaintiff does not argue that many of the tort claims he raised in his complaint do not require a lack of probable cause as an element to those claims. A party may abandon an issue on appeal by failing "to

---

[3] Plaintiff refers to the separate doctrine of res judicata; however, the trial court's ruling was premised on the preclusive-doctrine of collateral estoppel. As plaintiff only makes a passing reference to res judicata, it appears that plaintiff has conflated these two distinct doctrines.

sufficiently brief [that] issue for purposes of appellate consideration." *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009), citing *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). Therefore, there is no need to disturb the trial court's ruling given plaintiff's abandonment of that issue on appeal.

However, plaintiff would only otherwise be precluded from bringing his claims of malicious prosecution and false arrest based on collateral estoppel. Generally, "[i]n maintaining a claim of malicious prosecution, a plaintiff bears the burden of proving that (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Walsh v Taylor*, 263 Mich App 618, 632-633; 689 NW2d 506 (2004) (citation omitted). Similarly, "[a] claim of false arrest requires proof that the arrest lacked probable cause." *Burns v Olde Discount Corp*, 212 Mich App 576, 581; 538 NW2d 686 (1995), citing *Blase v Appicelli*, 195 Mich App 174, 177; 489 NW2d 129 (1992). As explained in further detail below, plaintiff's other claims do not require a lack of probable cause, and therefore, collateral estoppel would not bar plaintiff from bringing those claims against defendants.

As the trial court's order may be affirmed only on the grounds of collateral estoppel and abandonment, this Court need not reach plaintiff's other contentions. Regardless, for the sake of completeness, we address plaintiff's remaining contentions in turn.

Plaintiff contends that the trial court erred when it ruled that plaintiff was barred from relying on defendants' testimony during his preliminary examination and subsequent criminal trial to support his claims based on witness immunity. Plaintiff's contention has no merit.

As explained by the Michigan Supreme Court, "witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity," and that "immunity is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function." *Maiden*, 461 Mich at 134 (quotation marks and citation omitted). Further, "[w]itnesses who are an integral part of the judicial process are wholly immune from liability for the consequences of their testimony or related evaluations," and "[f]alsity or malice on the part of the witness does not abrogate the privilege." *Id*. (quotation marks and citations omitted).

In its opinion and order granting defendants' motions for summary disposition, the trial court ruled that "[a]s witnesses, Defendants are entitled to immunity from civil liability for their testimony and everything leading up to providing testimony." Plaintiff contends that any argument that his complaint was based on defendants' preliminary examination testimony or trial testimony is merely a "red herring." Specifically, plaintiff clarifies that his complaint only refers to the testimony of specific defendants because such testimony was only "evidence of the actual conduct of each Defendant leading up to, and concluding with, the actual criminal trial itself," and thus, none of plaintiff's claims were based on what a particular defendant "said at trial."

Plaintiff's complaint alleges that defendants were "integral in providing support through, either through pre-Charge or post-Charge statements, towards the prosecution of [plaintiff],"

they "knew, or should have known, that the allegations they raised or supported were false," and that defendants Lewand-Monroe and Wildman failed to disclose that their testimony during plaintiff's preliminary examination was false. Plaintiff contends in his brief on appeal that "[i]t was the conduct of the [defendants] leading up to bringing the Charge [of attempted false pretenses] in the first place, the publication of the Charge [of attempted false pretenses] for the public to see and scrutinize and pursuit of [plaintiff] despite the knowledge that there was no evidence to support it [, i.e., the charge of attempted of false pretenses,] that creates the liability [of defendants]."

Even if plaintiff's interpretation of his own complaint were dispositive, defendants are nonetheless entitled to witness immunity based on their testimony. See *Maiden*, 461 Mich at 134. Therefore, the trial court did not err when it ruled that defendants were entitled to witness immunity to the extent that any of plaintiff's claims were predicated on any testimony they may have provided during plaintiff's preliminary examination or trial. However, plaintiff's complaint only provides general allegations in support of plaintiff's various claims against defendants, and therefore, defendants' immunity is not entirely dispositive in this regard.

Plaintiff contends that the trial court erred when it ruled that defendants were entitled to governmental immunity. Plaintiff's contention has no merit.

"Generally, governmental employees acting within the scope of their authority are immune from tort liability except in cases in which their actions constitute gross negligence." *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004), citing *Maiden*, 461 Mich at 121-122. Under MCL 691.1407(3) of the governmental tort liability act ("GTLA"), governmental employees may be granted immunity from intentional-tort liability under certain circumstances. *Odom*, 482 Mich at 461. As explained by the Michigan Supreme Court, "when a defendant raises the affirmative defense of individual governmental immunity" then a trial court must:

> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).

> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

> * * *

> (4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* [*v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), superseded by statute on other grounds as stated in *Jones v Bitner*, 300 Mich App 65, 74; 832 NW2d 426 (2013),] test by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

-8-

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial. [*Odom*, 482 Mich at 479-480.]

According to plaintiff's complaint, defendants[4] are or were lower-level governmental employees.[5] The trial court granted defendants' motions for summary disposition, as it found that defendants satisfied the requirements for intentional-tort liability immunity for lower level governmental employees as provided by *Odom*.

At the outset, plaintiff contends that the trial court's ruling was improper because "there is overwhelming evidence that each [defendant] not only had no evidence to support any of the allegations against [plaintiff], but more importantly each knew to a certainty that the allegations against him were untrue." Yet plaintiff also notes that "those factual issues, and many more supporting [defendants'] tortious acts were not available for consideration in the motions at issue under [MCR] 2.116(C)(7)," and that those pieces of evidence "are critical components" for determining whether defendants were actually performing a governmental function.

Plaintiff does not identify the evidence he is referring to, and thus, it is impossible to determine whether that evidence was presented to the trial court, and therefore, within the record on appeal. Plaintiff did attach a number of excerpts of news articles to his brief on appeal that relate to blight demolition projects in Detroit and a related federal probe, but plaintiff has left unclear how those articles actually pertain to the allegations raised in his complaint. Therefore, plaintiff has abandoned this particular contention and whatever end he intended with it by failing to adequately brief it on appeal. *McIntosh*, 282 Mich App at 484.

Nonetheless, plaintiff does contend with particularity that the trial court erred when it ruled that defendants were entitled to governmental immunity because, per the allegations in his complaint, defendants did not believe their actions were within the scope of their authority,

---

[4] Plaintiff did not allege that McCarthy was a governmental employee, however, for the reasons noted above, McCarthy is not at issue in this appeal.

[5] However, according to an affidavit authored by Lewand-Monroe which was presented to the trial court, Lewand-Monroe became the Executive Director of the DLBA in October 2015, after previously having the title of "Deputy Director, Acquisitions & Land Reuse . . . ." Plaintiff contends that Lewand-Monroe became Executive Director of the DLBA in December 2015, based on a press release from that date announcing Lewand-Monroe's promotion. The trial court did not determine whether Lewand-Monroe was entitled to absolute governmental immunity for the period that she was the executive officer of the DLBA. Regardless, as discussed below, Lewand-Monroe is entitled to governmental immunity even if she was a lower-ranking governmental employee or official at the time of the allegations raised in plaintiff's complaint, as plaintiff's general allegations extend through a period of time beginning in 2015 and ending in 2016.

defendants' actions were not conducted in good faith, and defendants' actions were not discretionary. Plaintiff's contentions fail.

Plaintiff does not dispute that defendants were all lower-ranking governmental employees, but he argues that defendants could not believe that they were acting within the scope of their authority because plaintiff has alleged that defendants knowingly maintained false allegations against him in bad faith. In effect, plaintiff does not actually address whether defendants believed they were acting within the scope of their authority, but rather, plaintiff merely relies on his allegation that defendants were acting in bad faith. Whether defendants acted in good faith actually pertains to a different prong of the *Odom* analysis; plaintiff does not actually raise any arguments related to defendants' beliefs as to whether they were acting within the scope of their authority. Therefore, plaintiff has abandoned this issue on appeal. *Houghton ex rel Johnson*, 256 Mich App at 339.

Next, plaintiff contends that defendants are not entitled to governmental immunity because their actions were not undertaken in good faith. Plaintiff's contention has no merit.

"The good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom*, 482 Mich at 481-482 (citation omitted). Further, "there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.*" *Id*. at 474 (citation omitted). The Michigan Supreme Court "has described a lack of good faith as malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct . . . ." *Id*. (quotation marks and citation omitted).

Underlying plaintiff's claims in his complaint, plaintiff alleged that defendants and McCarthy "were engaged in a concerted effort to destroy [plaintiff's] reputation at all costs and irrespective of the falsity of the statements or contributions each made to that cause," and that defendants and McCarthy "knew, or should have known, that the allegations they raised or supported were false." Essentially, at the heart of plaintiff's claims is the allegation that defendants and McCarthy worked to cause plaintiff to be criminally charged with one count of attempted false pretenses and to damage his reputation through the usage of statements that defendants and McCarthy knew to be false.

As discussed above, when reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

Only Lewand-Monroe, Delgado, Wright, and Farkas provided self-authored affidavits in support of their motion for summary disposition. In their affidavits, Lewand-Monroe, Delgado, Wright, and Farkas denied plaintiff's general allegations in his complaint, and they denied participating in a concerted effort against plaintiff, providing any false statements, or being aware of any evidence that showed that the criminal allegations against plaintiff were false. Thus, Lewand-Monroe, Delgado, Wright, and Farkas provided documentary evidence that rebutted plaintiff's allegations that they acted with malice and a lack of good faith. Therefore, Lewand-Monroe, Delgado, Wright, and Farkas satisfy the good-faith element of the *Ross* test.

-10-

However, Buck, Wildman, Huntington, and Wiley did not provide affidavits in support of their motions for summary disposition. Buck, Wildman, and Huntington provided copies of the transcript of plaintiff's preliminary examination, but the testimony provided therein only pertained to whether there was probable cause to charge plaintiff.

Nonetheless, Buck, who per plaintiff's complaint investigated the criminal allegations against plaintiff, could not be said to have acted capriciously because, as discussed above, the district court found that there was probable cause to bind plaintiff over for trial. Similarly, Wildman, who per plaintiff's complaint only testified during plaintiff's criminal trial, and Huntington, who per plaintiff's complaint testified during plaintiff's criminal trial and preliminary examination, cannot be said to have acted capriciously when considering the finding of probable cause by the district court.

Similarly, Wiley provided a copy of her email correspondence with a journalist, ADR's contract with the MLB, news articles regarding the blight demolition in Detroit, and an excerpt from ADR's website in association with the MLB that directed interested individuals to submit questions directly to an email address that Wiley contended belonged to plaintiff. ADR's contract with MLB provided that ADR would assist with "demolition contract management." As plaintiff's only specific allegation against Wiley pertained to Wiley providing erroneous information to a journalist regarding plaintiff's role in the bid process for the blight demolition program in Detroit, where ADR's contract with the MLB provided that ADR was involved in that function, Wiley demonstrated that her communication to that journalist was not capricious.

Finally, plaintiff contends that defendants' actions were ministerial and not discretionary. Plaintiff's contention has no merit.

As explained by the Michigan Supreme Court:

A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. Ministerial acts constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. The execution of an act once a decision has been made is also ministerial in nature. Discretion, on the other hand, implies the right to be wrong. Discretionary acts require personal deliberation, decision and judgment. Although the decision need not be extraordinary, governmental immunity is not afforded for every trivial decision an actor may make. Granting immunity to an employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions. [*Odom*, 482 Mich at 475-476 (quotation marks and citations omitted).]

Despite alleging that defendants engaged in a concerted campaign to annihilate his reputation through the willful usage of false statements and a failure to correct such falsehoods, plaintiff nonetheless contends that each defendant was merely acting in a ministerial fashion throughout the course of their duties. Instead, plaintiff simply asserts that "[t]here [was] no evidence that any of the [defendants] had any discretion with respect to their actions . . . ." Moreover, plaintiff relies on his mistaken understanding of motions brought pursuant to MCR

-11-

2.116(C)(7), as he argues that any facts related to that "could not have been considered by the Court under a motion via MCR 2.116(C)(7) anyway." And contrary to plaintiff's representation, the trial court was presented with affidavits and other documentary evidence to consider from which it concluded that defendants' actions were discretionary. Regardless, plaintiff did not allege in his complaint that any of the actions undertaken by defendants were ministerial, nor does plaintiff argue that investigating alleged criminal activities, providing information or testimony in connection with that investigation, or writing an email in response to an inquiry posed by a journalist are ministerial acts.

Therefore, the trial court did not err when it ruled that defendants were entitled to governmental immunity. Thus, this Court need not address plaintiff's and Wiley's remaining contentions regarding whether plaintiff's defamation claims were properly pleaded.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien