# STATE OF MICHIGAN

# COURT OF APPEALS

SAMUEL JEROME,

        Plaintiff-Appellant,

v

MICHAEL CRUM and CITY OF BERKLEY,

        Defendants-Appellees.

UNPUBLISHED
December 27, 2018

No. 335328
Oakland Circuit Court
LC No. 2015-148401-CZ

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

In this case alleging police misconduct, plaintiff appeals the grant of summary disposition to defendants. For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff was the target of a criminal investigation pertaining to alleged sexual abuse of his step-daughter, the complainant. Defendant Michael Crum was the officer in charge of the investigation and was employed by the City of Berkley, his codefendant. We set forth only the facts necessary to place the legally significant issues in context, but the full facts can be found in *Jerome v Crum*, 695 F Appx 935, 936-940 (CA 6, 2017).

The complainant participated in four different interviews during the course of the criminal investigation. Crum interviewed plaintiff three times: on May 7, July 11, and August 21, 2013. And the complainant was interviewed at CARE House on May 16, 2013, by other individuals. However, there were significant discrepancies between the interviews. On May 7, 2013, the complainant stated that plaintiff assaulted her two times, and provided details. But the following week, at CARE House, the complainant stated that there had been no assault. Indeed, according to Crum's notes, the complainant "made excuses for [plaintiff] and took most of the blame for the incident."[1]

---

[1] The only record we have of this CARE House interview is from Crum's notes. Although Crum did not ask questions during the interview, he witnessed it and took notes.

On July 11, 2013, Crum interviewed the complainant to find out why her versions of events had changed. The complainant stated that her mother had made her change her story. Specifically, the complainant described her mother as saying that if she did not change her story, the mother, who already had a history of mental illness, would commit suicide. Further the mother purportedly threatened that the complainant and her younger sister would be sent to foster home, where they "would be raped daily." The complainant further reiterated that plaintiff had sexually assaulted her twice.

Crum sent the case to the prosecutor's office. However, the prosecutor requested further information from the complainant before authorizing an arrest warrant. As a result, Crum interviewed the complainant (and her sister) on August 21, 2013. In his written notes regarding that interview, Crum stated that the complainant's story was "exactly" as she had previously described it in the May 7, 2013 interview. However, the August 21 interview was video recorded,[2] and the recording reveals that the complainant's statements, rather than being exactly as she had said in May, diverged in some respects. The video shows that regarding the first alleged assault, the complainant stated that, in response to her telling plaintiff to stop, he kept saying "Why?"; in her May 7 description, by contrast, she stated that plaintiff said nothing during the encounter. Related to the second alleged assault, the video shows that the complainant stated that plaintiff "sat on [her]" and held her down, and that plaintiff "kept talking" about the complainant's mother. These descriptions are different from what Crum noted the complainant as saying during the May 7 interview, where she stated that plaintiff "sat next to her" and said nothing during the encounter.

Following the filing of criminal charges, the complainant testified at an October 9, 2013 preliminary examination. There, the details she provided were similar to what the video of the August 21 interview revealed. Regarding her recantation at CARE House, plaintiff testified that she had changed her story on that occasion because her mother had pressured her to do so. Based on the complainant's testimony at the preliminary examination alone, the court found probable cause to bind plaintiff over for trial.

However, Crum belatedly disclosed the existence of the videotape of the August 21 interview to the prosecutor, which resulted in the trial court declaring a mistrial. After the mistrial, the prosecution decided to not retry plaintiff.

Afterward, plaintiff filed a complaint in federal district court. He alleged federal claims of false arrest and imprisonment, malicious prosecution, denial of due process, and

---

[2] Crum claimed the recording was inadvertent, testifying that another officer ran the video machine, that Crum did not know how to do so, and that departmental policy prohibited the recording of juveniles such as the complainant.

unconstitutional policy or custom.[3] With respect to these federal claims, defendants moved for summary judgment pursuant to FR Civ P 56.

On August 5, 2015, plaintiff filed the instant complaint in state court, alleging four counts: unlawful arrest, malicious prosecution, false imprisonment, and gross negligence. On July 8, 2016, defendants moved the state court for summary disposition on plaintiff's state claims. With respect to the intentional tort claims of unlawful arrest and false imprisonment, defendants argued that Crum was entitled to governmental/individual immunity. Defendants also argued that the existence of probable cause defeated the two claims. With respect to the claim of malicious prosecution, defendants argued that the existence of immunity and probable cause defeated plaintiff's claim. And with respect to the gross negligence count, defendants argued that the claim merely was a restatement of plaintiff's unlawful arrest and false imprisonment claims. Moreover, defendants argued that the facts did not demonstrate conduct that was "so reckless" as to constitute gross negligence and that Crum's actions were not "the" proximate cause of plaintiff's alleged damages.

On August 25, 2016, plaintiff filed a response to defendants' motion in state court. On that same day, the federal district court entered an opinion and order that granted defendants' motion for summary judgment on the federal claims. The federal district court ruled that there had been probable cause to prosecute plaintiff, which defeated the claims for false arrest and malicious prosecution. Further, because the evidence did not show that Crum acted with reckless disregard for the truth, he was entitled to qualified immunity. The federal court also dismissed the due-process claim, which was based on an alleged *Brady* violation,[4] because the criminal proceedings ultimately resolved in plaintiff's favor. Finally, because plaintiff failed to demonstrate that Crum violated his constitutional rights, the court ruled that he could not show municipal liability on the part of defendant City of Berkley.

Subsequently, in their reply brief filed in the state trial court, defendants asserted for the first time that summary disposition was warranted because the federal judgment collaterally estopped plaintiff from litigating his state claims.

Two weeks later, the trial court held a hearing on defendants' motion. At the hearing, plaintiff's counsel commented on how he had not been afforded an opportunity to respond in writing regarding the collateral estoppel issue. Plaintiff's counsel argued that, in any event, collateral estoppel did not bar the state claims because (1) the federal judgment was under appeal and (2) the federal claims are completely separate from the state claims. The trial court entered an opinion and order granting defendants' motion for summary disposition. The trial court

---

[3] Plaintiff also alleged certain state claims, but the federal court declined to exercise supplemental jurisdiction over them and consequently dismissed them.

[4] "[T]he suppression of evidence that was favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

granted the motion solely on the basis that plaintiff was collaterally estopped from proceeding based on the adjudication of the federal claims.

Plaintiff subsequently filed his appeal of right in this Court. While this appeal was pending, the United States Sixth Circuit Court of Appeals affirmed the federal district court's decision to dismiss the federal claims. *Jerome*, 695 F Appx at 943.

## II. STANDARD OF REVIEW

Summary disposition is proper under MCR 2.116(C)(7) if plaintiff's claims are barred on the basis of collateral estoppel. *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 246; 590 NW2d 586 (1998). Summary disposition under MCR 2.116(C)(10) is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Transou v City of Pontiac*, 283 Mich App 71, 73; 769 NW2d 281 (2009). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Id.* at 72-73. When considering a motion under MCR 2.116(C)(7) or (C)(10), a court must consider the pleadings, depositions, admissions, and documentary evidence then filed in the action in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Transou*, 283 Mich App at 73.

## III. ANALYSIS

### A. DUE PROCESS AT THE TRIAL COURT

Plaintiff first argues that the trial court erred when it granted summary disposition in favor of defendants without allowing him to submit a written response to defendants' request for summary disposition on the basis of collateral estoppel. He claims that such action deprived him of his right to procedural due process. Plaintiff is correct that no written response *normally* would have been permitted because the issue of collateral estoppel was first raised in defendants' reply brief. While plaintiff asked at the hearing that he be allowed to submit a brief *after* the hearing, he never argued that the failure to allow him to submit such a brief violated his right to due process. As a result, the issue raised on appeal is not preserved, see *Keenan v Dawson*, 275 Mich App 671, 681; 739 NW2d 681 (2007), and our review is limited to one for plain error affecting substantial rights, *In re Egbert R Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), aff'd 480 Mich 19 (2008).

On appeal, plaintiff claims that he was precluded from opposing defendants' motion "in a meaningful way" and that we should remand to allow him "the opportunity to fully and meaningfully respond to what is now the central issue in this case [collateral estoppel]." We disagree. Plaintiff fails to acknowledge that he was given an opportunity at the motion hearing in the trial court to orally contest the motion and in fact availed himself of the opportunity. At the hearing, plaintiff's counsel argued that collateral estoppel did not bar the claims because (1) at that time the federal judgment was under appeal; and (2) the federal claims were completely separate from the state claims. Under these circumstances, there is no plain error requiring reversal. "The fundamental requirements of procedural due process are notice and a meaningful opportunity to be heard before an impartial decision maker." *In re Beck*, 287 Mich App 400, 401-402; 788 NW2d 697 (2010). Here, plaintiff fails to explain how, in light of his having been

timely apprised of the issue in advance, being permitted to orally argue at the motion hearing did not constitute a meaningful opportunity to contest the motion. Indeed, hearings in open court routinely are sufficient to meet this requirement. See, e.g., *Klco v Dynamic Training Corp*, 192 Mich App 39, 42; 480 NW2d 596 (1991). Accordingly, we hold that plaintiff has failed to show how he was denied the basic requirements of due process.

## B. MERITS OF TRIAL COURT'S DECISION

The trial court granted summary disposition on the basis of collateral estoppel. The term "collateral estoppel" refers to issue preclusion. *People v Gates*, 434 Mich 146, 154 n 7; 452 NW2d 627 (1990). By contrast, the term "res judicata" refers to "claim preclusion," *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629; 808 NW2d 471 (2010), which addresses "the preclusive effect of a judgment upon a subsequent proceeding on the basis of the same cause of action," *Gates*, 434 Mich at 154 n 7. "Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid judgment and the issue was actually and necessarily determined in the prior proceeding." *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). The doctrine of collateral estoppel is intended " 'to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication . . . .' " *Monat v State Farm Ins Co*, 469 Mich 679, 692-693; 677 NW2d 843 (2004) (citation omitted). "Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Id*. at 682-683 (quotation marks and citations omitted). Here, defendant argues that issues determined by the district court and court of appeals in plaintiff's federal lawsuit satisfy the requirements of collateral estoppel and thus bar the present case.

### 1. PRECLUSIVE EFFECT OF FEDERAL COURT RULING PENDING ITS APPEAL

In arguing that the trial court erred when it granted summary disposition in favor of defendant, plaintiff does not contend that the elements of collateral estoppel are not met. Instead, plaintiff contends that, because the federal district court's judgment was pending appeal in the Sixth Circuit at the time the trial court in this case granted summary disposition, the trial court should have stayed the matter until the Sixth Circuit rendered its decision. This issue is moot, as the Sixth Circuit has since then affirmed the federal district court's ruling. *Jerome*, 695 F Appx at 943. In any event, the federal district court's decision retained whatever preclusive effect it had during the pendency of the federal appeal. *Erebia v Chrysler Plastic Products Corp*, 891

F2d 1212, 1215 n 1 (CA 6, 1989).[5] As a result, the trial court did not err when it failed to wait for plaintiff's appeal in the Sixth Circuit to resolve.[6]

## 2. COUNTS I, II, AND III

Plaintiff next argues, in summary fashion, that collateral estoppel does not bar Counts I, II, or III of his complaint. Count I alleged that plaintiff was unlawfully or falsely arrested, on the basis that there was not probable cause to arrest him. Count II alleged malicious prosecution, again based on the purported absence of probable cause for initiating or continuing the criminal proceedings. Count III alleged false imprisonment, also premised on an asserted lack of probable cause to arrest him.

Thus, each of Counts I, II, and III was predicated factually on there being an absence of probable cause to arrest plaintiff at the time the criminal charges issued. See *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 389; 572 NW2d 603 (1998) ("[T]he only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause."); *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 18; 672 NW2d 351 (2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause.").

In plaintiff's federal lawsuit, the courts ruled that probable cause was in fact established and that even if Crum had disclosed the exculpatory recording of the August 21 interview to plaintiff, as he may have been required to, probable cause nevertheless would have continued to exist. See *Jerome*, 695 F Appx at 942. Thus, collateral estoppel applies to each of Counts I, II, and III because the federal court action was between the same parties, there was a valid judgment, and the issue of whether disclosure of the withheld video recording to plaintiff would have eviscerated probable cause was actually and necessarily determined in the prior proceeding.

---

[5] This Court "must apply federal claim-preclusion law in determining the preclusive effect of a prior federal judgment." *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380-381; 596 NW2d 153 (1999) (quotation marks and citation omitted).

[6] We note that to the extent the trial court erred when it granted summary disposition on the basis of collateral estoppel when that issue was initially raised in defendants' reply brief instead of their motion for summary disposition, any such error is harmless. It is important to recognize that in his brief on appeal in this Court, plaintiff simply asks that we remand to allow him to fully present his argument regarding collateral estoppel to the trial court. When, as here, all the facts necessary to resolve the issue have been presented to the trial court and therefore are available to us, the issue of collateral estoppel is one of law which we can decide without a remand. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 640; 734 NW2d 217 (2007); *Minicuci v Scientific Data Mgt, Inc*, 243 Mich App 28, 34; 620 NW2d 657 (2000); see also *People v LeBlanc*, 399 Mich 31, 49 n 12; 248 NW2d 199 (1976) (stating that a reviewing court may decide an issue, although not properly raised at the trial court, "in the interest of justice and judicial efficiency").

*Porter*, 214 Mich App at 485. Thus, based on collateral estoppel, plaintiff cannot prevail here because he may not relitigate the issue of probable cause. Because the lack of probable cause is an element of each of Counts I, II, and III, and because plaintiff cannot, as a matter of law, establish a lack of probable cause for his arrest, summary disposition was properly granted as to each of these counts.

### 3. COUNT IV

Plaintiff next argues that even if the federal decision is given full preclusive effect, while it might bar most of his claims, it cannot preclude his state-law claim of gross negligence. This is so, plaintiff maintains, because at most the federal decisions merely resulted in a conclusive determination that there was probable cause to arrest and imprison him, which is different than a determination that Crum did not act with gross negligence. While we agree that the determination of probable cause in the federal action does not equate to a finding regarding gross negligence, the claim is still barred under principles of collateral estoppel.

One of the elements of any negligence or gross negligence claim is causation. Indeed, under the governmental tort liability act, MCL 691.1401 *et seq.*, "[a]n employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence *that is the proximate cause of the injury.*" *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006) (emphasis added). A governmental employee's gross negligence is the proximate cause of an injury if it is " 'the one most immediate, efficient, and direct cause' preceding the injury." *Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2005), quoting *Robinson v Detroit*, 462 Mich 439, 446; 613 NW2d 307 (2000). Here, the Sixth Circuit expressly ruled that Crum's failure to disclose the tape of the August 21 interview did not cause any harm to plaintiff. Specifically, the Sixth Circuit ruled that, assuming

> Crum had maliciously misled the prosecutor into thinking that the August 21 interview had been identical to the initial May interview, [the complainant's] testimony at the preliminary examination in October repeating all of the material differences in the August 21 interview removed any materiality of Crum's statements in the maintenance of [plaintiff's] prosecution. The prosecution (and [plaintiff], for that matter) would have been aware that [the complainant's] October testimony differed from her May testimony. Because those differences were the same differences from the August 21 interview, any diminution of probable cause based on those discrepancies would have already been revealed and Crum's contention of consistent testimony would have had little impact upon the decision to continue prosecution. Therefore, the withholding of the information within the August 21 interview was not material to the prosecution. [*Jerome*, 695 F Appx at 942-943.]

In other words, the federal court ruled that Crum's failure to turn the tape of the August interview over to either the prosecution or plaintiff did not affect the continuation of the

prosecution against plaintiff and had no effect on plaintiff's continued confinement while awaiting trial.[7] With the federal courts having already determined that the failure to turn over the tape of the interview had no effect on plaintiff's prosecution or imprisonment, plaintiff cannot relitigate the issue of causation anew. Therefore, the trial court properly granted defendant's motion for summary disposition on this count as well.

Moreover, assuming that collateral estoppel was not applicable as the dissent suggests, summary disposition would be appropriate under MCR 2.116(C)(10) for lack of a genuine issue of material fact. For the reasons already outlined, there is no evidence to show that Crum's failure to turn over the video recording of the August interview was a cause, let alone the proximate cause, of plaintiff's continued prosecution or imprisonment. Any suggestion that the prosecution would have dropped the case against plaintiff sooner if it had been aware of the tape earlier is to engage in impermissible speculation. See *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact."). Any reliance on the prosecution's ultimate decision to decline pursuing the case after the mistrial is misplaced because there is nothing in the record to show that the prosecution's decision was based on the existence of the videotape. Indeed, there are a host of possible reasons not related to the late production of the videotape why the prosecution could have decided to forgo a second trial, including that the witnesses perhaps testified in an unexpected way at the first trial[8] or that the complainant perhaps simply decided that she was not going to testify or cooperate any more after having already been subjected to several interviews and having already testified in court twice. Hence, plaintiff cannot maintain his claim of gross negligence, and summary disposition is properly entered in favor of defendants. Thus, assuming the trial court erred when it granted summary disposition on plaintiff's gross negligence claim on the basis of collateral estoppel, we nonetheless affirm because summary disposition was warranted under MCR 2.116(C)(10). See

---

[7] The dissent claims that the Sixth Circuit's ruling did not address causation. Such an assertion is puzzling as the harm plaintiff complains of in his gross-negligence claim is his continued prosecution and incarceration. Thus, because the Sixth Circuit ruled that Crum's failure to turn the videotape over did not affect the prosecution's decision to prosecute the case and did not affect plaintiff's incarceration, see *Jerome*, 695 F Appx at 942-943, it clearly is a ruling on causation. In other words, because the failure to disclose the tape did not have an effect on plaintiff's confinement in jail, it necessarily did not cause his confinement. Also, the fact that the two involved claims are different (malicious prosecution vs. gross negligence) is of no consequence. The application of the doctrine of collateral estoppel is not limited to the same or similar claims because it involves *issue* preclusion, not *claim* preclusion. See *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001).

[8] The full transcript of the criminal trial was not provided to this Court, so we do not know how the witnesses, including the complainant, testified at that trial.

-8-

*Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel